USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/19/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,

                             Plaintiff,

                   -v-

GTF ENTERPRISES, INC. and GEDREY
THOMPSON,

                            Defendants.
-----------------------------------------------------------X

No. 10-CV-4258 (RA)

OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION
IN PART

RONNIE ABRAMS, United States District Judge:

      The Securities and Exchange Commission ("SEC") commenced this action against Defendants GTF Enterprises ("GTF"), Gedrey Thompson, Dean Lewis, and Sezzie Goodluck for injunctive relief, disgorgement and civil penalties for violations of the Securities Act of 1933 (the "Securities Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), the Investment Company Act of 1940 (the "Company Act"), and the Investment Advisers Act of 1940 (the "Advisers Act"). The action arises from a securities offering fraud and Ponzi scheme that targeted unsophisticated investors in Brooklyn, New York from 2004 to 2009.

      Final judgments have been entered against all Defendants. Lewis and Goodluck settled with the SEC pursuant to consent judgments entered on May 23, 2011, and June 4, 2013, respectively. (Dkt. 30, 67.) On September 20, 2013, the Court entered a default judgment against the remaining Defendants, GTF and Thompson (together, "Defendants"). (Final Judgment by Default ("Default Judgment").) The Default Judgment (1) enjoined Defendants from violating the securities laws, (2) found them "liable jointly and severally for disgorgement of $584,457, representing ill-gotten gains" from the conduct alleged, and prejudgment interest of $355,988.56,

and (3) found "that a civil penalty is appropriate." (Id.) Pursuant to 28 U.S.C. § 636(b)(1), the Court referred the matter to the Hon. Kevin Fox, United States Magistrate Judge, for an inquest on the appropriate amount of the civil penalty. (Dkt. 84.)

Before the Court is a Report and Recommendation ("Report") from Judge Fox, recommending that no civil penalty be awarded because, although he found that a third tier civil penalty was warranted, the appropriate amount of such penalty could not be ascertained. (Report at 11.) The SEC filed Objections to the Report on May 20, 2014, and revised Objections ("Obj.") on May 25, 2014, arguing that a civil penalty should be imposed. (Dkt. 85, 88.) To date, Defendants have not filed a motion to set aside or vacate the Default Judgment pursuant to Fed. R. Civ. P. 55(c) and 60(b), nor have they objected to the Report. For the reasons discussed below, the Report is adopted only in part.

## LEGAL STANDARD

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A court may accept portions of a report to which no objections are made as long as those portions are not "clearly erroneous." Greene v. WCI Holdings Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b)). As to those portions to which specific objections are made, a court must undertake a de novo review. See 28 U.S.C. § 636(b)(1); Greene, 956 F.Supp. at 513 (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)). When the party "makes only conclusory or general objections, or simply reiterates the original arguments," however, "the Court will review the Report strictly for clear error." See, e.g., Alam v. HSBC Bank USA, N.A., No. 07 Civ. 3540 (LTS), 2009 WL 3096293, at *1 (S.D.N.Y. Sept. 28, 2009).

The Securities Act, the Exchange Act, and the Adviser's Act authorize three tiers of monetary penalties for statutory violations. See 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e).[1] Under each provision, a first tier penalty may be imposed for any violation of the underlying statute, a second tier penalty may be imposed if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and a third tier penalty may be imposed if the requirements for a second-tier penalty are met and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Id.; see also SEC v. Razmilovic, 738 F.3d 14, 38 (2d. Cir. 2013). At all tiers, the penalty for each violation "shall not exceed the greater of (i) [a specified amount for each tier], or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e). The maximum statutory amounts for a natural person and for any other person, respectively, are: (1) $5,000 and $50,000 at the first tier, (2) $50,000 and $250,000 at the second tier, and (3) $100,000 and $500,000 at the third tier. Id. These amounts are adjusted for inflation. 17 C.F.R. Ch. II, Pt. 201, Subpt. E.

A defendant's disgorgement amount is a "helpful starting point" for calculating that defendant's gross pecuniary gain, but several adjustments must be made. SEC. v. Cole, 12 Civ. 8167 (RJS), 2014 WL 4723306, at *6 (S.D.N.Y. Sept. 22, 2014); see also SEC v. Amerindo Inc. Advisors, Inc., No. 05 Civ. 5231 (RJS), 2014 WL 2112032, at *11 (S.D.N.Y. May 6, 2014). First, unlike disgorgement, gross pecuniary gain may only include gains from frauds occurring within the five-year statute of limitations for civil penalties. Id. at *5 (citing Gabelli v. SEC, 133 S. Ct. 1216, 1220-21 (2013)). Second, the civil penalty statutes require that such awards be based on the

---

[1] Although the SEC's Inquest Memorandum also cited the Company Act (15 U.S.C. § 80a-48) as a fourth source of the civil penalties it seeks, the SEC relies exclusively on 15 U.S.C. §§ 77t(d), 78u(d)(3), and 80b-9(e) in its Objections to the Report. (See Obj. at 6.)

3

pecuniary gain of each defendant and do not allow the penalties to be imposed jointly and severally. SEC v. Pentagon Capital Mgmt., PLC, 725 F.3d 279, 288 (2d Cir. 2013).[2]

"Beyond setting maximum penalties, the statutes leave 'the actual amount of the penalty . . . up to the discretion of the district court.'" Razmilovic, 738 F.3d at 38 (quoting SEC v. Kern, 425 F.3d 143, 153 (2d. Cir. 2005). To inform that discretion, courts in this district weigh the following so-called Haligiannis factors: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." SEC v. Rajaratnam, 822 F.Supp.2d 432, 433 (S.D.N.Y. 2011) (quoting SEC v. Haligiannis, 470 F.Supp.2d 373, 386 (S.D.N.Y. 2007)); see also SEC v. Gupta, 569 F. App'x 45, 48 (2d Cir. 2014) (citing Haligiannis).

## DISCUSSION

Judge Fox concluded in the Report that a third tier civil penalty against GTF and Thompson was merited, but recommended awarding no penalty because the number of violations committed by Defendants had not been ascertained. (Report at 9, 14.) The SEC objects to the Report's finding that no penalty be awarded, arguing that the Court may determine the number of violations using the evidence in the record, and offering several methods for doing so: (1) finding a separate

---

[2] Following Pentagon Capital, courts in this Circuit have disagreed as to whether the total gains amassed by multiple defendants may be attributed to one or more of those defendants individually where they "mutually benefitted from the same gains." Amerindo, 2014 WL 2112032, at *11 (citing SEC v. Great Am. Techs., Inc., No. 07 Civ. 10694 (DC), 2010 WL 1416121, at *2 (S.D.N.Y. Apr. 8, 2010) (imposing fine against individual defendant for total gain by corporate and individual defendants), aff'd sub nom. SEC v. Setteducate, 419 F. App'x 23 (2d Cir. 2011)); see also Cole, 2014 WL 4723306, at *5. But see SEC v. Syndicated Food Serv. Int'l, Inc., No. 04 Civ. 1303 (NGG), 2014 WL 1311442, at *26 n.22 (E.D.N.Y. Mar. 28, 2014) (rejecting such approach because it results in overlapping gains—i.e. the pecuniary gains for all defendants add up to more than 100% of the total gains for the group). In the Court's view, consistent with the reasoning in Amerindo and Cole, such attribution of gains to an individual defendant is proper. Although Pentagon Capital held that a court may not impose a civil penalty jointly and severally, it did not address the determination of a particular defendant's pecuniary gain. See 725 F.3d at 298.

4

violation for each of the ten investors who invested within the five year statute of limitations, (2) finding a violation for each statutory claim charged against Defendants, or (3) finding one violation per defendant for the entire scheme. (Obj. at 1-2.) These proposed methods were introduced for the first time in the Objections, and thus would generally not be considered by the Court. Tavares v. City of New York, 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011). In light of the SEC's specific Objections, however, the Court's review is *de novo* as to the portion of the Report declining to calculate a penalty. 28 U.S.C. § 636(b)(1).

In the first instance, the Court agrees with Judge Fox's finding that a third tier civil penalty against GTF and Thompson is warranted. (Report at 9.) Thompson, through GTF, deliberately orchestrated an investment scheme that defrauded unsophisticated investors of hundreds of thousands of dollars over a five year period. (Report at 8.) After duping those investors about his qualifications and employment history, Thompson misappropriated the vast majority of their investments. (Id.) Thompson invested only $100,000 of the more than $800,000 entrusted to him, and even that amount was put into a risky options trading strategy that ultimately lost all of the invested funds. (Compl. ¶¶ 25-26.) In addition, Thompson took at least $465,000 in cash from the GTF fund for himself and diverted $52,000 into his personal accounts. (Id. ¶ 27.) By the scheme's end, at least seventeen investors lost over $600,000. (Matthews Declaration in Support of Motion for Default Judgment ("Matthews Decl.") ¶ 17.) This conduct clearly "involved fraud, deceit, manipulation, or reckless disregard of a regulatory requirement," and "directly or indirectly resulted in substantial losses to other persons" to merit a third tier penalty. See Razmilovic, 738 F.3d at 38-39.

The Court disagrees, however, with Judge Fox's recommendation that, despite the appropriateness of a third tier penalty, no penalty be imposed against Defendants. Although the Court did not make any explicit findings in the Default Judgment as to the number of violations

committed by Defendants, the Court may determine a suitable penalty based on the information provided to the Court by the SEC in support of its motion for default judgment and in its civil penalty submissions. (Dkt. 70, 88.) In calculating such penalty, the Court deviates from the SEC's original proposed methodology and instead adopts one of the approaches proposed in the Objections. (Inquest Memorandum ("Inquest Mem.") at 11.)[3]

## A. Maximum Penalty Calculation

As discussed above, the penalty statutes provide that for each violation the maximum penalty may not exceed the greater of the maximum pecuniary gain for each defendant or the statutory maximum penalty as adjusted for inflation. 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e). To calculate gross pecuniary gain, the disgorgement amount imposed on Defendants by the Court must be limited to gains obtained on or after May 26, 2005—five years before the filing of the instant action. See Gabelli, 133 S. Ct. at 1220-21. The disgorgement calculation table submitted by the SEC indicates that out of the total gains of the fraud, Defendants obtained approximately $547,791.64 (without interest) during the limitations period. (Matthews Decl. Ex. 21.)[4] This amount is separately attributable to both GTF and Thompson because, for all practical purposes, Thompson and GTF acted as one unit and mutually benefited from the fraud. See Amerindo, 2014 WL 2112032, at *13 (imposing same penalty on entity defendants and individual defendants); Cole, 2014 WL 4723306, at *6.[5]

---

[3] The SEC originally requested that the Court impose a $120,000 penalty against both Defendants for each of the 17 investors defrauded or a penalty equal to "the gross pecuniary gain of $613,360 against Thompson and GTF each." (Inquest Mem. at 11.) As the SEC now concedes, these proposed calculations did not account for the five year statute of limitations for civil penalties. Gabelli, 133 S. Ct. at 1220-21.

[4] This total was calculated by adding all of the investments made within the statute of limitations period and subtracting the money returned to investors within that same period. The sum does not, however, account for the restitution made by Defendant Lewis; because punishment is one of the purposes of imposing civil penalties, the Court may consider the full scope of Defendants' fraud. See Amerindo, 2014 WL 2112032, at *11.

[5] Although the SEC's Objections suggest that the Court limit its calculation of Thompson's gains to the $465,000 in cash withdrawals he made from the GTF brokerage account (Obj. at 11-12), the facts set forth in the Complaint show that all Defendants acted with a common purpose and that Thompson and GTF mutually benefited

Employing the statutory maximum per violation formula also yields considerable potential penalties. Adjusting for inflation, a penalty of $650,000 against GTF and a penalty of $130,000 against Thompson may be imposed for each violation occurring within the statute of limitations period. See 17 C.F.R. Ch. II, Pt. 201, Subpart E (identifying effective penalties for March 2005 – March 2009).

The penalty provisions of the relevant securities laws do not define "violation," 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e), but courts have determined the number of violations using several methods. See In re Reserve Fund Secs. and Derivative Litig., Nos. 09 MD 2011, 09 Civ. 4346 (PGG), 2013 WL 5432334, at *20 (S.D.N.Y. Sept. 30, 2013). The Court may, for instance, look to the number of investors defrauded or the number of fraudulent transactions to determine the number of violations. Id. (citing Pentagon Capital, 725 F.3d at 288 n.7 (2d Cir. 2013) (approving district court's methodology of counting each trade as a separate violation); SEC v. Elliot, No. 09 Civ. 7594 (KBF), 2012 WL 2161647, at *11 (S.D.N.Y. June 12, 2012) (counting each transaction as a separate violation); SEC v. Glantz, No. 94 Civ. 5737 (LAP), 2009 WL 3335340, at *6 (S.D.N.Y. Oct. 13, 2009) (assessing one violation for each victim); SEC v. Milan Capital Grp., Inc., No. 00 Civ. 108 (DLC), 2001 WL 921169, at *3 (S.D.N.Y. Aug. 14, 2001) (same); SEC v. Kenton Capital Ltd., 69 F.Supp.2d 1, 17 n.15 (D.D.C. 1998) (same)).[6] In the alternative, the Court may consider the number of statutes that each Defendant violated, or whether the violations were all part of a single scheme. Id. (citing SEC v. Shehyn, No. 04 Civ. 2003 (LAP), 2010 WL 3290977, at *8 (S.D.N.Y. Aug. 9, 2010) (assessing penalty for each statute violated); SEC v. Johnson, No.

---

from the fraud's total gains. In any event, as discussed further below, the Court does not rely on Defendants' gross pecuniary gain to calculate the penalties in this case.

[6] The Court does not adopt the section of the Report that rejects the per-investor methodology for assessing the number of violations. (Report at 10.)

7

03 Civ. 177 (JFK), 2006 WL 2053379, at *10 (S.D.N.Y. July 24, 2006) (assessing penalty for each statutory violation found by jury); SEC v. Rabinovich & Assocs., LP, No. 07 Civ. 10547 (GEL), 2008 WL 4937360, at *6 (S.D.N.Y. Nov. 18, 2008) (finding one violation where defendant's conduct was part of "single scheme or plan")).

The evidence submitted by the SEC indicates that ten of the investor-victims invested money with Defendants in sixteen transactions during the statutory period, and that three additional investors received refunds for earlier investments. (Matthews Decl. Ex. 21.) Moreover, Defendants were found liable in the Default Judgment for each of the counts in the Complaint against them, including those for which civil penalties may be imposed—four counts in total against Thompson and three against GTF. (Compl. ¶¶ 44-65.)[7] Employing any of these metrics, the number of violations multiplied by the gross pecuniary gain or the amounts allowed by statute yields sizable maximum penalties against GTF and Thompson. Because the judgment in this case was entered by default, however, and the Court lacks detailed information about the Defendants' fraudulent conduct, it finds it most appropriate to impose a single penalty against each Defendant for the entirety of the scheme. The Court turns now to the determination of such penalties.

## B. Application of Halgiannis Factors

The above-referenced Haligiannis factors weigh in favor of imposing a substantial penalty on each Defendant. Defendants' conduct was egregious, deliberate, and resulted in significant losses. See 470 F.Supp.2d at 386. Thompson knowingly funneled hundreds of thousands of dollars from unsophisticated investors into GTF and then his own pocket. (Compl. ¶¶ 1, 3, 4.) Furthermore, the conduct was not "isolated." Haligiannis, 470 F.Supp.2d at 386. Rather, during

---

[7] The Default Judgment deemed the Complaint's uncontested claims for relief admitted by Thompson and GTF. Specifically, as charged in the Complaint, final judgment was entered against Thompson and GTF for violations of Sections 5 and 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and against Thompson for violations of Section 206 of the Adviser's Act. (See Compl. ¶¶ 44-55; Default Judgment.)

the statute of limitations period, Defendants made sixteen fraudulent investments for ten investors, generated false account statements to perpetuate the scheme, and used some investors' funds to satisfy withdrawal requests from others. (Compl. ¶ 28; Matthews Decl. Ex. 21.) As to the final Haligiannis factor, there is no basis for reducing the penalty because Thompson and GTF have not appeared to defend themselves and thus cannot demonstrate any financial hardship. See 470 F.Supp.2d at 386.

For these reasons, the Court concludes that the maximum statutory penalty—$130,000 against Thompson and $650,000 against GTF—is appropriate. See 17 C.F.R. Pt. 201, Subpt. E, Tbl. III.

## CONCLUSION

Accordingly, the Report and Recommendation is adopted in part and rejected in part, and the Default Judgment against Gedrey Thompson and GTF Enterprises is amended to include the following: pursuant to 15 U.S.C. §§ 77t(d), 78u(d)(3), and 80b-9(e), a civil penalty of $130,000 is imposed against Thompson and a civil penalty of $650,000 is imposed against GTF Enterprises. The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated:   February 19, 2015
         New York, New York

Ronnie Abrams
United States District Judge